# Exhibit A

EXECUTION VERSION

HOTEL MANAGEMENT AGREEMENT

BETWEEN

CAROLINA HOSPITALITY 2010 LLC

and

WISCHERMANN PARTNERS, INC.

FOR THE

THE BLAKE HOTEL,
CHARLOTTE, NORTH CAROLINA

LEGAL26302590.3

# TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS .................................................................................................................1
ARTICLE 2 TERM .............................................................................................................................9
  2.1  Operating Term ........................................................................................................9
ARTICLE 3 FRANCHISOR-REQUIRED IMPROVEMENTS ...........................................................9
  3.1  Franchisor-Required Improvements .......................................................................9
  3.2  Professional Services ............................................................................................10
  3.3  Cost .......................................................................................................................10
ARTICLE 4 GENERAL HOTEL OPERATION ...............................................................................10
  4.1  Opening the Hotel.................................................................................................10
  4.2  Name.....................................................................................................................10
  4.3  Appointment of Manager......................................................................................10
  4.4  General Duties and Authority of Manager ...........................................................10
  4.5  Operation at Owner's Expense ..............................................................................12
  4.6  Impositions ...........................................................................................................12
  4.7  Owner's Assistance ..............................................................................................12
  4.8  Intentionally Omitted ...........................................................................................12
  4.9  Manager's Right to Perform Owner's Obligations................................................12
  4.10  Manager's Liability ..............................................................................................13
ARTICLE 5 PERSONNEL.................................................................................................................13
  5.1  Hotel Employees...................................................................................................13
  5.2  Owner's Employees..............................................................................................13
  5.3  Termination ..........................................................................................................14
  5.3  Termination ..........................................................................................................14
ARTICLE 6 ANNUAL PLAN ...........................................................................................................14
  6.1  Preparation and Approval .....................................................................................14
  6.2  Failure to Approve ...............................................................................................15
  6.3  Periodic Monitoring..............................................................................................15
  6.4  Qualifications........................................................................................................15
ARTICLE 7 BANK ACCOUNTS.......................................................................................................16
  7.1  Operating Account................................................................................................16
  7.2  Working Capital ...................................................................................................16
  7.3  Reserve Fund Account..........................................................................................16
  7.4  Remittances to Owner ..........................................................................................16
  7.5  Investments...........................................................................................................16
  7.6  Withdrawals from Bank Accounts ........................................................................17
ARTICLE 8 BOOKS, RECORDS AND STATEMENTS ...................................................................17
  8.1  Accounting System...............................................................................................17
  8.2  Statements.............................................................................................................17
  8.3  Independent Auditor .............................................................................................17
ARTICLE 9 REPAIRS, MAINTENANCE AND CAPITAL IMPROVEMENTS.....................17
  9.1  Maintenance and Repairs......................................................................................18
  9.2  Reserve Fund Work ..............................................................................................18
  9.3  Capital Improvements...........................................................................................18
  9.4  Technical Assistance Services...............................................................................18

9.5    Emergencies.................................................................................................18
9.6    Signage .....................................................................................................18
ARTICLE 10  COMPLIANCE WITH LAWS.....................................................................19
10.1   Compliance by Manager............................................................................19
10.2   Owner's Compliance .................................................................................19
10.3   Right of Owner to Contest or Postpone Compliance ..................................19
ARTICLE 11 FEES AND OTHER AMOUNTS PAYABLE ...............................................19
11.1   Consulting and Technical Services Fee......................................................19
11.2   Base Management Fee...............................................................................19
11.3   Incentive Fees ..........................................................................................19
11.4   Annual Reconciliation ..............................................................................20
11.5   Expense Reimbursement ...........................................................................20
11.6   Payment Authorization.............................................................................20
11.7   Interest .....................................................................................................20
11.8   No Right of Off-Set...................................................................................20
ARTICLE 12 INSURANCE............................................................................................20
12.1   Insurance Coverage ..................................................................................20
12.2   Purchase of Insurance...............................................................................21
12.3   Waiver of Subrogation...............................................................................21
12.4   Owner's Risk ............................................................................................21
12.5   Changes ...................................................................................................21
ARTICLE 13 INDEMNIFICATION AND LIMITATION OF LIABILITY.............................21
13.1    Indemnification by Owner.......................................................................22
13.2   Defense against Claims ............................................................................22
13.3   Indemnification by Manager .....................................................................22
13.4   Continuation of Obligations .....................................................................22
ARTICLE 14 MARKS ...................................................................................................23
ARTICLE 15 CONFIDENTIAL AND PROPRIETARY INFORMATION .............................23
15.1   Right to Use ..............................................................................................23
15.2   Revisions ..................................................................................................23
15.3   Ownership and Non-Disclosure.................................................................23
15.4   Survival.....................................................................................................23
ARTICLE 16 MUTUAL TERMINATION RIGHTS ..........................................................24
ARTICLE 17 OWNER'S TERMINATION RIGHTS ..........................................................24
17.1   Owner's General Default Rights ................................................................24
17.2   Default by Manager – Opportunity to Cure................................................24
17.3   Termination Without Cause.......................................................................25
17.4   Termination Based on Project Performance ...............................................25
ARTICLE 18 MANAGER'S TERMINATION RIGHTS.......................................................25
18.1   Default by Owner – Opportunity to Cure ..................................................25
ARTICLE 19 CONSEQUENCES UPON TERMINATION/EXPIRATION .............................26
19.1   Owner's Obligations..................................................................................26
19.2   Manager's Rights.......................................................................................26
19.3   Manager's Obligations ..............................................................................26
19.4   Owner's Rights ..........................................................................................27
19.5   Survival.....................................................................................................27

LEGAL26302590.3

ARTICLE 20 DAMAGE OR DESTRUCTION; CONDEMNATION ..........................................27
20.1    Damage or Destruction – Termination .................................................................27
20.2    Damage or Destruction – Restoration ..................................................................27
20.3    Condemnation – Termination...............................................................................27
20.4    Condemnation – Restoration ................................................................................27
20.5    Condemnation – Temporary Use...........................................................................28
20.6    Restoration............................................................................................................28
20.7    Fees.......................................................................................................................28
20.8    Consequences of Termination ..............................................................................28
ARTICLE 21 TRANSFERS..................................................................................................28
21.1    Assignment by Manager.......................................................................................28
21.2    Transfers by Owner ..............................................................................................29
21.3    Estoppel Certificates.............................................................................................29
ARTICLE 22 OWNER'S UNDERSTANDINGS, REPRESENTATIONS WARRANTIES AND
COVENANTS .......................................................................................................................29
22.1    Representation and Warranties..............................................................................29
22.2    Understandings .....................................................................................................30
22.3    Covenants .............................................................................................................30
ARTICLE 23 MISCELLANEOUS PROVISIONS.................................................................30
23.1    Severability...........................................................................................................30
23.2    Governing Law......................................................................................................30
23.3    Venue and Jurisdiction .........................................................................................31
23.4    Modifications and Changes ..................................................................................31
23.5    Headings/Terms....................................................................................................31
23.6    Third Parties .........................................................................................................31
23.7    Understandings and Agreements ..........................................................................31
23.8    Force Majeure.......................................................................................................31
23.9    Relationship of Parties..........................................................................................31
23.10   Jury Waiver...........................................................................................................32
23.11   Binding Agreement...............................................................................................32
23.12   Notices..................................................................................................................32
23.13   Execution/Counterparts ........................................................................................32
23.14   Attorneys' Fees.....................................................................................................32
23.15   Actions By Others ................................................................................................32
23.16   Joint and Several Liability ....................................................................................33
23.17   Survival.................................................................................................................33
23.18   Time of the Essence..............................................................................................33
23.19   Approvals..............................................................................................................33
23.20   Successors Bound .................................................................................................33
23.21   Cumulative Rights................................................................................................33
23.22   Terminology .........................................................................................................33
23.23   Exhibits, Addenda, Schedules and Riders ...........................................................33
23.24   Interpretation ........................................................................................................33
23.25   Limitation of Claims.............................................................................................33
23.26   Photocopies...........................................................................................................34
23.27   Confidentiality ......................................................................................................34

iv

## MANAGEMENT AGREEMENT

This Management Agreement (this "Agreement") is dated April 12, 2013, and is by and between **Carolina Hospitality 2010 LLC**, a North Carolina limited liability company ("Owner"), and **Wischermann Partners, Inc.**, a Minnesota corporation ("Manager"), or its assign.  Owner and Manager agree as follows:

### ARTICLE 1
### DEFINITIONS

The following terms, as used in this Agreement, shall have the following respective meanings:

Adjusted Net Operating Income.  As defined in the Uniform System.

Affiliate.  Any Person that, directly or indirectly, Controls, is Controlled by or is under common Control with any other Person.

Annual Plan.  The Annual Operating Budget, the Capital Expenditure Budget, the Reserve Fund Work Budget and all other information submitted to Owner with such budgets.

Annual Operating Budget.  The estimate of Gross Revenues, Expenses and Permitted Deductions and other categories, in the form and format established by Manager consistent with the Uniform System for each Fiscal Year during the Operating Term.

Average Monthly Management Fee.  The total Base Management Fee payable to Manager under this Agreement for the 12-month period immediately preceding the event requiring a determination of the Average Monthly Management Fee, divided by 12.  If there are not 12 months from the Commencement Date to the end of such period for which the Average Monthly Management Fee is being calculated, then the Average Monthly Management Fee is the total Base Management Fee payable for the total of the months in such period divided by the number of such months.  However, if the Average Monthly Management Fee is to be determined prior to the end of the first month after the Commencement Date, then the Average Monthly Management Fee is equal to one-twelfth (1/12) of the total Base Management Fee that would be payable during the first 12 months following the Commencement Date as provided in the approved Annual Operating Budget for such period.  If there shall never have been an approved Annual Operating Budget, the Average Monthly Management Fee shall be Fifteen Thousand 00/100 Dollars ($15,00.00).  Partial months are not included in these calculations.

Base Management Fee.  As defined in Section 11.2.

Capital Expenditure Budget.  Each annual budget reflecting the estimated costs for all Capital Expenditures.

Capital Expenditures.  Expenditures for any Capital Improvements, including those that are necessary to Operate the Hotel in compliance with the Operating Standards.

Capital Improvements.  Any and all major alterations and improvements to the Hotel and all major repairs and replacements to the structural, mechanical, electrical, HVAC, plumbing or vertical transportation elements of the Hotel other than certain non-routine repairs and maintenance to the Hotel which are normally capitalized under generally accepted accounting principles.  Capital Improvements shall not include any FF&E or other items or improvements acquired, constructed, installed or effected pursuant to any Reserve Fund Work.

Commencement Date.  May 1, 2013.

Condemnation.  The temporary or permanent acquisition of all or any portion of the Project by any Governmental Authority having the power of condemnation, eminent domain or similar procedure by compulsory acquisition or voluntary sale under threat of compulsory acquisition.

Confidential and Proprietary Information.  Confidential and Proprietary Information includes Guest Data, Hotel Data, and all Information, whether or not developed by Manager from its own Guest Data or from Hotel Data, regardless of whether such are labeled confidential, proprietary or trade secret.

Construction.  All activities and plans, specifications, drawings, scheme boards and other information with respect to the planning, design, construction, remodeling, redecorating, furnishing, equipping, renovation, rebuilding and replacement of, and additions, alterations, improvements and repairs to the Hotel, including the FF&E, OS&E and interior finishes.

Control.  The right or ability, directly or indirectly, to cause a Person to act in accordance with another Person's instructions.

Corporate Staff Employees.  Any individual employed by Manager who is not assigned permanently or temporarily on a full-time basis at the Hotel.

Effective Date.  The date of this Agreement.

Encumbrance.  Any claim, lien, charge or liability attached to or resulting from a security interest in all or any part of the Project other than a Mortgage.

Equity Interest.  Any stock, unit, membership, partnership or other legal or beneficial ownership interest in Owner.

Equity Holder.  Any Person who owns an Equity Interest directly or indirectly.

Executive Committee.  The Hotel's general manager, director of food and beverage, director of sales, controller, chief engineer, Human Resources director, and any other key executive of the Hotel designated in writing by Manager to be a member of the Executive Committee.

Expenses and Permitted Deductions.  The expenses and deductions attributable to all Operating Departments and Undistributed Operating Expenses as those terms are used and defined in the Uniform System, but only as they relate to the Operation of the Hotel, including:

2

(a)      Expenses related to Manager's employees while assigned permanently or temporarily on a full-time basis at the Hotel.

(b)      Reimbursable Expenses.

(c)      Marketing expenses incurred by Manager for programs in which the Hotel participates.

(d)      insurance premiums and deductibles other than for a Property Policy.

(d)      The Reservation Charges.

Expenses and Permitted Deductions do not include payments for the following:

(i)      Capital Improvements.

(ii)      Property Taxes, Rent and Property Insurance.

(iii)      Federal and State income taxes and Gross Receipts Taxes (or their equivalent imposed by any other governmental authority having jurisdiction).

(iv)      The Consulting and Technical Services Fee.

(v)      Reserve Fund Payments.

(vi)      The Incentive Fee.

Fiscal Year. A Fiscal Year that ends on December 31. The first Fiscal Year shall be the period commencing on the Commencement Date and ending on December 31 of the same calendar year. The term "full Fiscal Year" means any Fiscal Year containing not fewer than 365 days. A partial Fiscal Year after the end of the last full Fiscal Year and ending with the expiration or earlier termination of the Term shall constitute a separate Fiscal Year.

Force Majeure. (i) Acts of nature including hurricanes, typhoons, tornadoes, cyclones, other severe storms, winds, lightning, floods, earthquakes, volcanic eruptions, disease and epidemics; (ii) fires and explosions except those intentionally caused by Owner, Manager or their respective agents; (iii) acts of war; riots or other civil commotion; terrorism, including hijacking, sabotage, bombing, murder, assault and kidnapping; (iv) strikes or other labor disturbances; (v) shortages of critical materials or supplies; (vi) action or inaction of Governmental Authorities, including the imposition of restrictions on room rates, Hotel Employee wages or other material aspects of the Hotel's Construction or Operation; and (vii) any other events or conditions beyond the control of Owner or Manager, but excluding causes due to downturns in general economic conditions or insufficient funds. If any Governmental Authority Controls a party, then any act of that Governmental Authority does not constitute a Force Majeure as to that party.

Franchisor-Required Improvements. The initial renovations and improvements ("PIP") required by the Future Franchisors, not including any such improvements performed after December 31, 2013.

Future Franchisors. Presently expected to be Sheraton for the South Tower and Le Méridien for the North Tower.

FF&E. Furniture, furnishings, fixtures, outfittings, decorations, and equipment customarily used in connection with the Construction and Operation of a Hotel, including all equipment required for the operation of kitchens, laundries, dry cleaning facilities and bars, special lighting, signs, carpets, drapes, shades, tapestries, pictures, paintings, beds, mattresses,

3

chairs, desks, tables, sofas, wall coverings, televisions, radios, intercoms, telephones and office equipment and machinery.

Governmental Authority.   Any governmental entity, and any political or other subdivision of any governmental entity, and any agency, department, commission, board, bureau, court or instrumentality of any of them, which, at any time, has jurisdiction over the Owner, Manager or any part of the Project.

Governmental Permits.   All approvals, certificates, licenses and permits from any Governmental Authority required to evidence full compliance by Owner or Manager with all Legal Requirements or required to evidence that the Project complies with all Legal Requirements.

Gross Operating Profit.   The excess, during each Fiscal Year, of Gross Revenues over Expenses and Permitted Deductions, as determined pursuant to the Uniform System.

Gross Revenues.   All consideration, whether by cash, credit, in kind or otherwise, derived directly or indirectly from the Operation of the Hotel, as finally determined on an accrual basis in accordance with the Uniform System and generally accepted accounting principles consistently applied, including: (i) all rentals and charges for guest rooms, suites, meeting rooms, conference rooms, ballrooms and other public rooms, including all charges for room reservations and deposits not refunded to guests; (ii) sales of certain food and beverages, served on the premises, including all charges for room service, Hotel banquets and catering fees; (iii) all sales or leases of miscellaneous and sundry merchandise and services, including parking, valet, laundry, telephone, telex, facsimile, e-mail and Internet access, computer equipment, audiovisual, check room, vault and other miscellaneous services, cover and minimum charges for guest entertainment, fees charged for the temporary use of facilities at the Hotel and all sales through vending machines and all other consideration from business conducted pursuant to this Agreement; (iv) that portion of all business interruption insurance awards made with respect to and for lost Gross Revenues and received in respect of the Hotel; (v) condemnation awards for temporary use of the Hotel; (vi) amounts recovered with respect to legal proceedings or settlement of claims arising out of the Operation of the Hotel that represent amounts that would have been included in Gross Revenues had they been collected without resort to legal proceedings; (vii) interest earned on the Operating Account and the Reserve Fund Account; and (viii) all rentals, fees, commissions and other consideration derived by the Owner from the restaurants, coffee, spa, parking leases and from bona fide, unaffiliated lessees, licensees and concessionaires of Owner with respect to the Hotel.  Gross Revenues do not include:

(a)     Excise, sales and use taxes or similar impositions collected directly from customers or included as part of the sales price of any goods or services and paid to any Governmental Authority, such as gross receipts, admission or similar equivalent taxes;

(b)     Sales and other receipts of tenants, licensees and concessionaires;

(c)     Insurance proceeds, except as provided in clause (iv) above;

(d)     Condemnation awards, except as provided in clause (v) above; and

(e)     Proceeds from sale of the Project.

4

Guest Data.   Personal information, data and statistics on Hotel guests compiled from information furnished to Manager by Future Franchisors.

Hotel.   A 608 "key" hotel presently Operated under this Agreement under the name set forth on the cover page and planned in the future to be operated under names approved by the respective Future Franchisors, or such other names as determined by Owner, which Hotel includes that certain tract of land and all current and future improvements Constructed or to be Constructed on the property located at, more particularly described in Schedule 1, and which improvements include the Hotel and related facilities described on Schedule 2.   Although the Hotel may in the future be branded as two hotels, for purposes of this Agreement such hotels shall in the aggregate be the Hotel.   For purposes of this Agreement the Hotel includes leased and licensed operations only to the extent provided in Section 4.12 and Schedule 2.

Hotel Data.   That part of the Guest Data and Statistics derived from the Operation of the Hotel.

Hotel Employees.   Those individuals selected by Manager and employed by Owner to work at, or directly in connection with the operation of the Hotel.

Impositions.   All real estate, personal property, utility, business or occupation taxes that cannot be passed along to customers of the Hotel and other taxes (other than income taxes imposed by the United States Government or the State of Minnesota on fees earned by Manager pursuant to this Agreement and payroll taxes), imposed by any Governmental Authority with respect to the Project.

Incentive Fee.   As defined in Section 11.3.

Legal Requirements.   Any law, ordinance, order, rule or regulation of any Governmental Authority and any requirement, term or condition contained in any restriction or restrictive covenant affecting Owner, Manager or the Project.

License Agreements.   The license agreements to be entered into with the Future Franchisors, as amended from time to time.

Maintain and Repair.   The making of routine maintenance and repairs to the Hotel and everything in it, including the FF&E, needed to keep the Hotel in good order, condition and repair in accordance with the Operating Standards, but excluding, specifically, Capital Improvements and Reserve Fund Work.

Marketing.   All activities related to marketing, sales, advertising, promotion and public relations with respect to the Hotel.

Marks.   The name of the Hotel and all other trademarks, service marks, trade names, copyrights, insignia, emblems, slogans, logos, commercial symbols, signs, designs, trade dress and all other visual identification, applicable to the Hotel pursuant to the License Agreements.

5

Months.   Full calendar months, but including any partial month in which the Commencement Date, termination date or expiration date occurs, unless stated otherwise and whether capitalized or not capitalized.

Mortgage.   Any mortgage or deed of trust that encumbers all or any portion of the Project at any time.

Mortgagee.   The holder of any Mortgage.

Operating Account.   The account or accounts containing all money attributable to Gross Revenues, and any other money received for the payment of Hotel expenses or required to be deposited pursuant to this Agreement, exclusive of the Reserve Fund Payments.

Operating Standards.   The Operation of the Hotel in accordance with the standards established in the License Agreements, and until execution of the License Agreements in accordance with the standards in effect immediately prior to the Commencement Date, in a physical condition substantially similar to that of the Hotel as of the Commencement Date and taking into account the making and completion of the Maintenance and Repairs and Capital Improvements required throughout the Operating Term pursuant to Article 9, all in accordance with this Agreement.

Operating Term.   The initial term of this Agreement as established in Section 2.1, unless this Agreement shall be sooner terminated as herein provided, in which case the "Operating Term" shall end upon the date of such termination.

Operation.   All aspects that are customarily the subject of the management and operation of the Hotel, including those with respect to accounting, collections, credit policies, making arrangements with credit card organizations, maintaining bank accounts, receiving, holding and disbursing funds, guestrooms, the use of Hotel facilities, personnel, labor relations, training, food and beverage, FF&E, OS&E, purchasing, housekeeping, kitchen and laundry, signage, Maintenance and Repairs, Construction, public relations, life-safety, engineering, insurance, security and loss prevention, leases, licenses and concessions, Marketing, reservations, entertainment, administration, engaging independent contractors to provide legal, accounting or other professional or technical services, the back of house and the front desk. "Operate" (and variations thereof) shall mean the performance of such actions and functions as are necessary or desirable as part of such Operation.

OS&E.   All operating supplies and equipment including chinaware, glassware, linens, silverware, uniforms, utensils, inventories and other similar items used in the Operation of the Hotel.

Ownership Transfer.   Any Transfer: (i) by Owner of all or any part of the Project; (ii) of all or any part of Owner's interest in this Agreement; or (iii) of an Equity Interest that results in Equity Holders having the ability to Control Owner who were not Equity Holders as of the Effective Date.

6

Person.   Any natural person or legal entity, including trustees, representatives, administrators, heirs, executors, partnerships, corporations, limited liability companies, trusts, unincorporated organizations and governmental agencies, departments and branches.

Project.  The entire complex consisting of the Hotel.

Reimbursable Expenses.   All reasonable travel, lodging, entertainment, telephone, facsimile, postage, courier, delivery, Hotel Employee training and other expenses incurred by Manager that are directly related to its performance of this Agreement, including specifically all expenses incurred by Manager in connection with any mandatory conference conducted by or on behalf of Future Franchisors for all of its licensed operators and their managers, all as set forth in the then-applicable Annual Operating Budget.

Reservation Charges.  As defined in the Uniform System.

Reserve Fund Account.  The account into which Reserve Fund Payments are made.

Reserve Fund Payments.  The reserve fund payments required pursuant to the License Agreements, and until the License Agreements are in effect, Three percent (3%) of Gross Revenue.

Reserve Fund Work.  Expenditures for the routine replacement and new purchases of FF&E and interior finishes.

Reserve Fund Work Budget.  Each annual budget reflecting the estimated costs for all Reserve Fund Work.

Restoration.   The repairing, rebuilding and replacing of the Hotel after its damage, destruction or Condemnation.

Special or Unforeseen Circumstances.   Circumstances including emergency situations related to life safety matters, unforeseeable shortages of equipment or supplies, unusual experiences with theft or breakage, unusual fluctuating volumes of business, circumstances not reasonably anticipated by Manager when preparing the Annual Plan, and the need to comply with the requirements of any Governmental Authority or of insurance carriers.

System.  The system developed and owned by Future Franchisors, as modified by Future Franchisors from time to time, applicable to Operation of the Hotel.

System Information.  All information provided by Manager to Owner in the ordinary course of business, in any form, including information, knowledge, know-how, drawings, materials, technology, equipment, Marketing plans, strategic plans, methods, procedures, specifications, policy manuals, operating manuals, techniques, computer programs and systems.

Technical Services.  Services provided by Manager to Owner under this Agreement in connection with the PIP's required pursuant to the License Agreements, including assisting Owner in the design of the PIP's and the selection of FF&E.

LEGAL26302590.3

Termination Fee.   An amount calculated by multiplying the Average Monthly Management Fee by the lesser of:  (a) twenty four (24) or (b) the number of months left in the original stated Operating Term (or any renewal thereof) from the time the termination notice is delivered to the end of the original stated Operating Term or any then-effective renewal thereof, as the case may be.  In no event shall the provisions of this Agreement with respect to the payment of a Termination Fee upon termination of this Agreement under certain circumstances be construed as defining or limiting the amount recoverable by Manager from Owner by reason of any default on the part of Owner.

Third Party.   Any Person, other than Manager, Owner and their respective Affiliates.

Transfer.   The voluntary or compulsory giving to another, directly or indirectly and by operation of law or otherwise, of all or any part of that which is being transferred by any means or device, including an assignment, transfer, conveyance, security interest, Encumbrance, divestiture, sale, disposition, pledge, foreclosure, levy, attachment, execution, trade, lease, sublease, gift, bequest, inheritance or delegation.

Uniform System.   The "Uniform System of Accounts for Hotels" (Hotel Association of New York City, Inc.) as revised periodically, which, as of the Effective Date, is the Tenth Revised Edition, 2006, as modified by this Agreement and the System, and, if not addressed by any of the above, generally accepted accounting principles.  The editions to be applied to any particular matter are the editions that were in effect at the time the matters in question occurred. If a matter spans more than one edition, each such edition will apply to the matter for the period of time when such edition was in effect.

W.A.R.N. Act.   As defined in Section 5.3.

Words and Phrases.   Whenever any of the words and phrases in each subparagraph below are used in this Agreement, whether capitalized or not capitalized, the sentence in which they are used must be read as if the other words and phrases in such subparagraph appear in the same sentence so that the meaning and interpretation of each applies to that sentence in the broadest sense, eliminating any obvious contradictions or inconsistencies.

"According to", "in compliance with", "as required by", and "meet" with respect to this Agreement, the Operating Standards and the Construction Standards.

"Approval", "consent", "permission", and "authorization" with respect to Owner's or Manager's approval.

"In or at Manager's discretion" or similar words are to be read as "in Manager's reasonable discretion".   "Sole" discretion means "in Manager's absolute discretion without any limitation whatsoever".

"In default of", "in breach of", "in violation of", "defaults", "breaches", "failure to perform", and "violates" with respect to a party's obligations under this Agreement.

LEGAL26302590.3

"Includes", "such as", "for example" are not intended to limit the listing that follows. The listings are examples or illustrations. The words should be read as if the words "without limitation" or "but not limited to" or a similar phrase appears after them.

"May", "at its option", "is entitled to", and "has the right to" are all permissive and the decision is at the applicable party's sole discretion.

"Shall", "should", "must", and "will" are all obligatory.

"Terms", "covenants", "conditions", "obligations", "provisions", and "requirements" with respect to a referenced document.

"With respect to", "pursuant to", "under", "in connection with", "arising out of", "related to", "resulting from", and "by reason of" in all references.

"Without any liability", "without having or assuming any liability", "creates or assumes no liability", "has or assumes no liability", "gives rise to no liability" including "whatsoever" in each case. Each all of the following words includes the others: "liability", "duty", "responsibility", and "obligation".

Working Capital. Shall mean funds that are used in the day to day operation of the business of the Hotel, including, without limitation, amounts sufficient for the maintenance of change and petty cash funds, amounts deposited in operating bank accounts, receivables, amounts deposited in payroll accounts, prepaid expenses and funds required to maintain Inventories, less accounts payable and accrued current liabilities.

## ARTICLE 2
### TERM

2.1     Operating Term. The Operating Term commences on the Commencement Date and expires on December 31, 2018.

## ARTICLE 3
### FRANCHISOR-REQUIRED IMPROVEMENTS

3.1     Franchisor-Required Improvements. Subject to Force Majeure, Owner and Manager will each use reasonable efforts and diligence to complete the License Agreements and obtain approval of the Franchisor-Required Improvements so that the Franchisor-Required Improvements can be substantially completed within the time required in the License Agreements. Manager shall recommend to Owner the means to implement the Franchisor-Required Improvements on behalf of Owner, including recommendations for: the selection and ordering of FF&E, interior design; terms and conditions pursuant to which such work will be provided, review of draw requests, and communicating with the Future Franchisor with respect to compliance with and modifications to the Project Improvement Report; provided however, in connection with such responsibilities, Owner shall have ultimate approval rights and Manager will not guarantee any such work.

9

3.2    Professional Services.    Manager shall assist Owner with the selection of designers, suppliers, contractors and subcontractors. Owner will engage only experienced and licensed, where applicable, architects, engineers, contractors, interior designers and other design and Construction professionals, and will give due consideration to any opinions that Manager might express with respect to such engagements. Manager is not a design or construction expert, makes no assurances regarding the design or construction of the Franchisor-Required Improvements and shall not be liable for any defects therein.

3.3    Cost. The Technical Services Fee (as defined in Section 11.1) is payable for the Manager's services pursuant to this Article. Owner is solely responsible for the entire cost of all of the activities contemplated by this Article.

## ARTICLE 4
## GENERAL HOTEL OPERATION

4.1    Opening the Hotel. The Commencement Date is scheduled to be May 1, 2013.

4.2    Name. Manager will initially Operate the Hotel under the name "The Blake Hotel." Manager shall assist Owner in renaming the Hotel in conjunction with entering into new License Agreements. Except in connection with the new License Agreements Owner will not change the name of the Hotel without providing Manager with notice of such change at least ninety (90) days prior to the effective date of such change.

4.3    Appointment of Manager. Owner appoints Manager as Owner's exclusive agent, and Manager accepts the appointment, to Operate the Hotel during the Operating Term in accordance with the Operating Standards. Manager may, subject to Owner's approval in each such instance, perform certain of its obligations through its Affiliates. In such cases, Manager will still be directly responsible to Owner, and Owner's obligations pursuant to this Agreement will still run directly to Manager.

4.4    General Duties and Authority of Manager. Manager will Operate the Hotel in accordance with the Operating Standards and subject to the following:

(a)    Manager will retain Hotel Employees selected by Manager within the approved Annual Operating Budget and that Manager deems to be reasonably necessary or advisable in connection with the Operation of the Hotel, but in no event will Manager enter into any written employment agreements with any Hotel Employees without Owner's prior written consent.

(b)    Manager will determine and implement the terms of admittance, charges for rooms and commercial space, and charges for entertainment, food and beverages, in accordance with the approved Annual Operating Budget. Manager will establish, subject to Owner's reasonable approval, policies customary in the industry that provide for: (i) charging varying rates to different customers or groups of customers; (ii) permitting individuals to occupy guestrooms at rates lower than published rates or free of charge; and (iii) permitting individuals to dine at the Hotel's restaurants and lounges free of charge. Until the new License Agreements are in effect, Marketing the Hotel and booking rooms shall use Owner's existing systems. Upon execution of a License

10

LEGAL26302590.3

Agreement, Marketing the Hotel and booking rooms shall be in accordance with the License Agreement.

(c)     Manager will keep Owner advised of the progress of union negotiations, if any, and Owner's representatives may attend those negotiations. Manager will present all collective bargaining agreements and labor contracts to Owner for its approval and execution, which approval shall not be unreasonably withheld or delayed.

(d)     Manager, following notice to Owner of such proposed action, will initiate, settle or otherwise dispose of litigation, or claims arising in the ordinary course of operating the Hotel which might give rise to litigation, including the adjustment of insurance claims, in Owner's name. However, Manager will not take any action with respect to such matters without Owner's approval where the amount in controversy exceeds $5,000 (subject to annual increases of five percent (5%) commencing on the first anniversary of the Commencement Date).

(e)     Manager may provide Corporate Staff Employees and other Manager representatives visiting the Hotel on a temporary basis related to Manager's Operating the Hotel with free room, board and amenities, on a strictly space-available basis.

(f)     Manager may, upon notice to Owner in each instance, authorize unbudgeted emergency Capital Expenditures totaling no more than $5,000 (subject to annual increases of five percent (5%) commencing on the first anniversary of the Commencement Date) in any Fiscal Year when reasonably necessary.

(g)     Manager will present all tenant leases and concessions agreements for restaurants, food service and other facilities within the Hotel to Owner for approval and execution.

(h)     Manager will purchase goods and services for the Hotel on reasonable terms taking into account customary factors, including price, quality, quantities, delivery dates and Operating Standards. For material purchases to be made from the Reserve Fund Account in any Fiscal Year, Manager, in the applicable Reserve Fund Work Budget, will propose the method for making such purchases for Owner's approval. Notwithstanding anything in this Section 4.4(h) to the contrary, Manager will purchase certain FF&E, OS&E and other goods and services from specific suppliers that have been approved by Owner. If Owner does not approve or disapprove any such contract requiring Owner's approval within thirty (30) business days after such contract is submitted to Owner, Owner shall be deemed to have approved such contract.

(i)     To the extent funds in the Operating Accounts are sufficient to do so, and unless otherwise instructed by Owner, Manager shall pay from the Operating Accounts all amounts necessary to discharge Owner's obligations under ground or other leases affecting the Hotel and any Mortgages and Impositions relating to the Hotel, and Manager shall furnish to Owner, upon request, evidence that all such amounts have been paid. To the extent the terms thereof both (i) are expressly identified in writing by Owner to Manager and (ii) directly affect or relate to the responsibilities of, or would reasonably

11

be executed to be performed by, Manager in connection with the management of the Hotel in accordance with the terms of this Agreement, Manager shall exercise all reasonable efforts to operate the Hotel in accordance with the terms of any ground or other leases affecting the Hotel and any Mortgages; provided, however, that Manager shall not be deemed to be in default with respect to its agreement to so operate the Hotel unless both (x) it has in fact failed to perform such terms and such failure continues beyond the notice and applicable cure period provided for under this Agreement and (y) Owner has received written notice of default concerning such non-performance from the applicable lessor or Mortgagee. To the extent that Manager is responsible hereunder for effecting, or arranging for, any maintenance, repairs, alterations, improvements, renewals or replacements in or to the Hotel, Manager shall exercise all reasonable efforts to prevent any liens from being filed against the Hotel in connection therewith. Manager and Owner shall cooperate fully in obtaining the release of any such liens.

4.5     Operation at Owner's Expense. Manager's actions with respect to performing its obligations under this Agreement are solely for Owner's account. Manager: (a) is not liable for any expenses, debts or liabilities for its own account; and (b) is not obligated to advance any of its own funds with respect to the performance of its obligations under this Agreement and the Operation of the Hotel. Unless specifically stated in this Agreement that Manager is to bear an expense, and that the expense is not to be charged to the Hotel or the Owner, all expenses, debts and liabilities incurred by Manager in performing such duties are chargeable to the Hotel and are Owner's responsibility. If the Operation of the Hotel does not generate adequate funds to pay such expenses, Owner will promptly deposit the required amount into the Operating Account or the Reserve Fund Account, as applicable.

4.6     Impositions. Owner, in good faith, may contest the validity or amount of any Impositions by appropriate proceedings, so long as such proceedings do not interfere with the Operation of the Hotel or result in a default under any Mortgage or other Encumbrance. Owner will pay all Impositions being contested unless the collection or enforcement of any lien securing the payment is stayed while the matter is pending.

4.7     Owner's Assistance. Owner will assist Manager with respect to those matters that are within Owner's control, as may be necessary: (i) to keep the Hotel open and Operating in accordance with the Operating Standards, as determined in Manager's discretion; and (ii) to enable Manager to exercise its rights and perform its obligations related to this Agreement. Owner, with assistance from Manager, will obtain and maintain in good standing all Governmental Permits, except those that, under applicable Legal Requirements, are required to be obtained and maintained by Manager.

4.8     Intentionally Omitted.

4.9     Manager's Right to Perform Owner's Obligations. If Owner fails to satisfy its obligations under this Agreement and such failure continues for at least ten (10) days after written notice from Manager, Manager may, but shall not be required to, make such payment or do such act, as appropriate in connection therewith, and the amount of the expense thereof, if made or done so by Manager, shall be paid by Owner to Manager with interest thereon at the Interest rate set forth in Section 11.7 from the date paid or expended by Manager, and shall

12

constitute additional expenses hereunder due and payable with the next monthly installment of Base Management Fee, provided however the making of such payment or the doing of such act by Manager shall not operate to estop Manager from the pursuit of any remedy of which Manager would otherwise be entitled.

4.10    Manager's Liability.  Notwithstanding any other provisions of this Agreement, but excluding a breach of this Agreement by Manager or Manager's willful misconduct or gross negligence, Manager, in its capacity as agent or independent contractor providing goods or services pursuant to this Agreement shall not be responsible for, and Owner will make no claims against Manager on account of, any errors of judgment made in good faith in performing Manager's responsibilities or providing goods and services pursuant to this Agreement.

## ARTICLE 5
## PERSONNEL

5.1    Hotel Employees.  Manager will establish and present as a part of the Annual Plan pursuant to Article 6 and will thereupon implement all employment policies for Hotel Employees, including salaries, wages, fringe benefits, other compensation, recruitment, hiring, relocation, transfer, discharge and retirement, severance and other benefit plans in accordance with Manager's standard policies, subject to reasonable variances Manager establishes for the Hotel.

5.2    Owner's Employees.  All Hotel Employees will be employees of Owner or such other Person as designated by Owner.  Manager shall obtain the approval of Owner before hiring the general manager, the controller, the director of sales, or the chief engineer of the Hotel. Owner's approval for the hiring of the general manager, controller, director of sales, and chief engineer shall be obtained as follows: Manager shall submit to Owner the resume of its candidate for such position.  Owner shall have a period of thirty (30) days from its receipt of the applicable candidate's resume, including work history and education, within which to interview and evaluate such candidate (and such candidate shall be made available during such period of time for such interview or evaluation at Owner's reasonable convenience).  If Owner does not approve the first (1st) candidate (based on the process described above), Manager shall submit a second (2nd) candidate, using the same process described above.  If such second (2nd) candidate is not approved by Owner (based on the same process described above), Manager shall submit a third (3rd) candidate, using the same process as described above.  If Owner does not approve three (3) candidates for the position submitted by Manager pursuant to the provisions of this Section 5.2, Manager shall have the right to select the person to be offered the applicable position, in Manager's sole discretion, from the three (3) candidates proposed to Owner.  If Owner fails to timely approve or reject any such candidate, the applicable candidate shall be deemed approved by Owner.  Notwithstanding the provisions of Section 5.1 and this Section 5.2 or any other provision of this Agreement, all costs, expenses and liabilities relating to Hotel Employees shall be expenses of operating the Hotel and the responsibility of Manager for acts or omissions of Hotel Employees shall not extend beyond responsibility for the gross negligence or willful misconduct of the members of the general manager and assistant general manager and the Executive Committee other than as a result of a breach of this Agreement by the Manager. Manager acknowledges, however, that the members of the Executive Committee have the duties

13

that include but are not limited to those specified in the first sentence of Section 5.1 with respect to other Hotel Employees.

5.3     Termination.   Upon termination or expiration of this Agreement, Owner and Manager will take such actions as may be reasonably necessary, and which are consistent with the Operating Standards, to mitigate any loss, cost, claim, liability or expense with respect to Hotel Employees resulting from such termination or expiration. In addition to its obligation to pay all employee related expenses during the Operating Term and any extensions thereof, Owner agrees to pay to Manager amounts due Hotel Employees arising out of termination of this Agreement, including, without limitation, salaries, employee benefits, bonuses and severance and vacation pay accrued as of the date of termination. Owner also agrees to reimburse Manager for any claims relating to termination, such as "wrongful termination" claims or state or federal plant closing law claims (e.g., Federal Worker Adjustment and Retraining Notification Act ("W.A.R.N. Act") claims or similar state laws) arising other than from a breach of this Agreement by Manager or from Manager's gross negligence or willful misconduct. These obligations of Owner will survive termination of this Agreement. Notwithstanding anything in this agreement to the contrary, nothing shall prevent the continued employment of the Hotel Employees by the Owner or such other Person designated by Owner after the term of this Agreement and if such continued employment is desired by Owner and in such event Manager shall assist in facilitating such continued employment including any effort by Owner to continue the employment of the general manager of the Hotel. In conjunction with the termination of this Agreement and at the request of Owner, Manager will facilitate the termination of employment of any or all Hotel Employees as directed by Owner.

5.4     Non Solicitation.   At no time shall Manager solicit or attempt to persuade any employee of the Owner (including, without limitation, the Hotel Employees) to terminate such employment relationship (whether for the purpose of entering into any such relationship on behalf of any other business organization in competition with the Hotel or otherwise); provided, however, that the foregoing shall not prohibit Manager from engaging in the general solicitation (whether by newspaper, trade publication or other periodical or pursuant to the use of an executive search consultant) of employees (or hiring any employees that respond to such general solicitation) so long as such solicitation is not directed specifically at any employee or group of employees of the Owner.

## ARTICLE 6
## ANNUAL PLAN

6.1     Preparation and Approval.

(a)     Manager will submit the Annual Plan for the first Fiscal Year to Owner within forty-five (45) days after the Commencement Date.

(b)     The Annual Operating Budget Summary for Fiscal Year 2014 is attached as Schedule 3.

(c)     Manager will submit the Annual Plan for each Fiscal Year after that, at least sixty (60) days prior to the beginning of each Fiscal Year, the Annual Operating

14

LEGAL26302590.3

Budget for which shall be based on the pro forma operating budget for each such Fiscal Year attached as Schedule 3. Manager will include in the proposed Reserve Fund Work Budget the estimated costs for Reserve Fund Work and will include in the Capital Expenditure Budget the estimated costs for Capital Improvements. The Reserve Fund Work Budget and the Capital Expenditure Budget each will include the method for handling the accomplishment of the work contemplated thereby, any technical assistance needed and its cost, and the estimated schedule for planning, beginning and completing the work. Owner shall give its written approval or disapproval of the Annual Plan not later than thirty (30) days after its submission to Owner. If Owner does not approve or disapprove such Annual Plan within such thirty (30)-day period, then Owner shall be deemed to have approved the Annual Plan as submitted by Manager.

6.2     Failure to Approve.

(a)     If Owner objects to all or any portion of the Annual Plan submitted by Manager, then Owner shall notify Manager of the reasons for its objections, and Owner and Manager shall use their good faith efforts to agree in respect of the items to which Owner objects. Pending agreement being reached, Manager will continue to Operate the Hotel in accordance with those parts of the Annual Operating Budget that Owner has approved. As to any parts not approved, Manager will continue to Operate the Hotel in the new Fiscal Year at levels of expenditure comparable to those of the Annual Operating Budget for the preceding Fiscal Year with suitable adjustments for other factors, including the volume of business, inflation, local business climate, competition, this Agreement and compliance with the Operating Standards.

(b)     Owner will not withhold its approval with respect to any portion of the Capital Expenditure Budget if the expenditures are reasonably necessary to keep the Hotel operating in compliance with the Operating Standards. If Owner does not approve the Capital Expenditure Budget, Manager will make such Capital Expenditures that Owner has approved, and may make such other Capital Expenditures as may be permitted pursuant to the provisions of Section 9.5.

6.3     Periodic Monitoring. Manager will monitor the Annual Plan throughout the Fiscal Year. If Manager considers it necessary to revise any portion of the Annual Plan during the Fiscal Year, whether due to volume of business, local business climate, competition, changed trading climate, unforeseen capital requirements or for any other reason, Manager must submit such revisions with an appropriate explanation to Owner for approval as soon as reasonably possible. The principles established in Sections 6.2 (a) and (b) apply to the approval process in this Section.

6.4     Qualifications. Manager will use commercially reasonable efforts to Operate the Hotel in accordance with, and to achieve the results projected in, the Annual Plan. While the Annual Plan is an estimate only, Manager will prepare it using assumptions that Manager believes to be reasonable at the time of its preparation. The Hotel's actual results may differ from the projected results, and Manager does not guarantee, warrant or represent that the actual financial or other results will conform to the Annual Plan. Notwithstanding any other provision

15

in this Agreement, this Section qualifies any and all references to the Annual Plan in this Agreement.

## ARTICLE 7
## BANK ACCOUNTS

7.1     Operating Account. Gross Revenues and additional funds supplied by Owner for Working Capital or other purposes, exclusive of funds deposited in the Reserve Fund Account, will be deposited in the Operating Account. Subject to the terms of Section 7.6 hereof, Manager will open, control and maintain the Operating Account at all times. All Expenses and Permitted Deductions and any other amounts that Manager is required or authorized to pay pursuant to this Agreement, subject to Section 7.3, will be paid out of the Operating Account. Manager may also maintain house banks or petty cash funds as reasonably required for Operating purposes.

7.2     Working Capital. Prior to the Commencement Date, and after that as required, Owner will deposit the Working Capital into the Operating Account. Manager shall make reasonable efforts to reduce the amount of Working Capital needed at the Hotel, and Manager shall make no more than one (1) request for Working Capital in any calendar month. If at any time funds available in the Operating Account for Working Capital are not sufficient, Manager may after thirty (30) days notice to Owner use all or part of the Reserve Fund Account to supplement the Operating Account but only as required to maintain a minimally sufficient balance in the Operating Account. Owner will, within ten (10) days of notice of such use from Manager, promptly replace all funds so used. For greater certainty, if all or part of the Reserve Fund Account is used for Working Capital purposes, Manager will not remit any funds to Owner from the Operating Account until the Reserve Fund Account deficiency is replenished.

7.3     Reserve Fund Account.     After the payment of all Expenses and Permitted Deductions, Manager, on or before the twenty fifth $(25^{th})$ day of each month, will transfer the Reserve Fund Payments from the Operating Account into the Reserve Fund Account. Cash received from the sale of the Hotel's FF&E in the ordinary course of business will also be deposited into the Reserve Fund Account. If the Hotel's Operation does not generate sufficient cash to fund the Reserve Fund Account, Owner, within thirty (30) days of Manager's request, will provide the cash or commitments for cash as required to fund the Reserve Fund Account in accordance with this Section. To the extent contemplated by the Annual Plan or otherwise as approved by Owner in writing, the entire balance of the Reserve Fund Account can be spent each Fiscal Year. At the end of any Fiscal Year, any of the Reserve Fund Account not spent will be carried forward to the next Fiscal Year and will thereupon be considered advance payments to be otherwise made into the Reserve Fund Account for such Fiscal Year. Subject to any other uses that may be specifically authorized in this Agreement, Manager and Owner will use the Reserve Fund Account only for Reserve Fund Work.

7.4     Remittances to Owner. From time to time, and at least monthly, Manager will remit all sums in the Operating Account in excess of the amount reasonably required for Working Capital to Owner.

7.5     Investments. Manager will deposit the funds in the Operating Account and the Reserve Fund Account into an FDIC insured interest bearing account or certificates of deposit,

16

with due regard for the cash needs of the Hotel. Manager will use no other investment mediums without Owner's approval. If Owner approves any other investment mediums or to the extent the funds in the FDIC insured interest bearing account exceed $250,000, Owner bears all risk of loss with respect to funds and approved investments unless such loss results from a breach of this Agreement by Manager or from Manager's gross negligence or willful misconduct, in which event the risk of such loss will be borne by Manager (unless the same is fully reimbursed by insurance).

7.6    Withdrawals from Bank Accounts.    Manager and Owner will designate the individuals who will have the authority to sign checks and other documents and instructions of withdrawal from the Operating Account and the Reserve Fund Account, provided such individuals are bonded or otherwise insured.    Upon the termination or expiration of this Agreement, Manager will have no further rights to either of these accounts.

## ARTICLE 8
## BOOKS, RECORDS AND STATEMENTS

8.1    Accounting System.    Manager will keep the Hotel's financial books and records so that they reflect the results of the Operation of the Hotel in accordance with the Uniform System.    Manager will make all of such books and records available to Owner at all reasonable times for all reasonable purposes.    Upon the termination or expiration of this Agreement, Manager will turn over the originals and copies of all of such books and records to Owner so as to insure the orderly continuance of the operation of the Hotel.    After that, Owner will make them available to Manager at all reasonable times and for all reasonable purposes.

8.2    Statements.    At Owner's expense, and within fifteen (15) days after the end of each month, Manager will deliver to Owner: (i) a profit and loss statement showing the results of the Hotel's Operation for such month and the Fiscal Year-to-date; (ii) a balance sheet as of the close of such month; and (iii) a comparison with the Annual Operating Budget for the same month and Fiscal Year-to-date.    At Owner's expense, Manager shall prepare and submit on a timely basis any report of the Operation of the Hotel required by Future Franchisors.

8.3    Independent Auditor.    If requested by Owner, Manager will cooperate with an independent auditor of local, national or international repute having proper and necessary hotel experience, selected and paid for by Owner, so as to allow the independent auditor to deliver to Owner within one hundred and ten (110) days after the end of each Fiscal Year an audited profit and loss statement showing the results of the Operation of the Hotel and an audited balance sheet for such Fiscal Year. The auditor will also prepare and deliver a statement showing the calculation of the Base Management Fee and Incentive Fee for such Fiscal Year. Notwithstanding anything contained in this Section 8.3 to the contrary, Manager shall reimburse Owner for the cost of any such audit if the same discloses that any report prepared and submitted to Owner by Manager understates Gross Revenues in any material respect.

## ARTICLE 9
## REPAIRS, MAINTENANCE AND CAPITAL IMPROVEMENTS

17

9.1     Maintenance and Repairs.  During the Operating Term, Manager will Maintain and Repair the Hotel with funds from the Operating Account.  However, with respect to portions of the Hotel for which Third Parties have obligations to Maintain and Repair through leases or otherwise, the Third Parties will bear such costs and Manager will monitor the performance of such Third Parties' obligations under their agreements.  Manager has no responsibility to repair or otherwise maintain the structural integrity of the Hotel or other matters relating to defects with respect to the Construction of the Hotel, all of which are Owner's responsibilities; provided, however, that Manager shall promptly notify Owner of the need for any such repair or maintenance work as soon as Manager becomes aware of such need.

9.2     Reserve Fund Work.  During each Fiscal Year Manager will arrange for the Reserve Fund Work to be done in accordance with the Reserve Fund Work Budget.  Manager will use reasonable efforts to schedule such work consistent with the balance in the Reserve Fund Account at any time and in accordance with the scheduled payments into the Reserve Fund Account.

9.3     Capital Improvements.  During each Fiscal Year Manager or Owner, as applicable, will arrange for the Capital Improvements provided for in the Capital Expenditure Budget for that Fiscal Year to be made.  Any Construction with respect to such Capital Improvements will be commenced and completed in accordance with Article 3.  Except as otherwise provided in this Agreement, no Capital Improvements with respect to the Hotel shall be made without Owner's approval, which approval shall not be unreasonably withheld.

9.4     Technical Assistance Services.  Manager's responsibilities under this Agreement with respect to Reserve Fund Work, Capital Improvements and Restorations include general co-ordination of the Hotel Operation with professionals retained by Owner to handle all aspects of such work.  If Owner wishes to retain Manager to perform additional technical assistance services with respect to any of these matters, other than the duties set forth in Section 3.1, and for Manager's technical services with respect to any improvements beyond improvements pursuant to the Reserve Fund or included in a typical Capital Improvement Budget, the services must be documented by a separate, written agreement at an agreed upon fee.

9.5     Emergencies.  Notwithstanding anything in this Agreement to the contrary or if specific expenditures were not included in the Annual Plan, if, at any time, Manager reasonably believes that: (i) a condition exists at the Hotel that needs immediate attention, including those needed to keep the Hotel Operating or relating to safety; (ii) Maintenance and Repairs, Reserve Fund Work or Capital Improvements are required to comply with any Legal Requirement or the requirements of any insurance company covering any of the risks against which the Hotel is insured; or (iii) expenditures are required to remedy any condition caused by a Force Majeure, Manager will first notify Owner and, as promptly as possible, take all steps and make all expenditures reasonably necessary to take care of the matter.  However, if, in Manager's reasonable opinion, an emergency exists and action needs to be taken before notifying Owner, Manager may act and then notify Owner as soon as reasonably possible after that.

9.6     Signage.  Manager will arrange for the purchase of all interior and exterior signs for the Hotel in compliance as provided for in the Annual Plan.

18

## ARTICLE 10
## COMPLIANCE WITH LAWS

10.1     Compliance by Manager.   Manager's performance under this Agreement is subject to, and Manager will use prudent business judgment in Operating the Hotel to comply with, Legal Requirements and the requirements of any insurance companies covering any of the risks against which the Hotel is insured.  If the cost of compliance exceeds by five percent (5%) the amount for any expense category contained in the approved Annual Operating Budget in any instance, Manager will promptly notify Owner and immediately prepare adjustments to the budgets intended to allocate funds for such instance if available from other portions of the budget.

10.2     Owner's Compliance.   Owner's performance under this Agreement is subject to, and Owner will use prudent business judgment to comply with, Legal Requirements and the requirements of any insurance companies covering any of the risks against which the Project is insured.

10.3     Right of Owner to Contest or Postpone Compliance.   Notwithstanding Sections 10.1 and 10.2, if so permitted by Legal Requirements and not detrimental to the Operation of the Hotel, Owner may contest any Legal Requirements and insurance requirements, and postpone compliance pending the determination of such contest.

## ARTICLE 11
## FEES AND OTHER AMOUNTS PAYABLE

11.1     Consulting and Technical Services Fee.   In consideration of Manager's Consulting and Technical Services in connection with the Franchisor-Required Improvements Owner will pay Manager a "Technical Services Fee" in the amount of $15,000 for each of the first six (6) months of the Operating Term, payable on or before the tenth (10th) day of each such month.

11.2     Base Management Fee.   For each Fiscal Year during the Operating Term, starting with the Commencement Date, Owner will pay Manager, on or before the tenth (10th) day of each month, a Base Management Fee in an amount equal to three percent (3%) of Gross Revenues for the pertinent month (the "Base Management Fee").

11.3     Incentive Fees.  Owner will pay to Manager an incentive fee (the "Incentive Fee") for each Fiscal Year, within ninety (90) days after the end of such Fiscal Year, in an amount equal to the applicable percentage set forth below times an amount equal to (x) the Adjusted Net Operating Income for such Fiscal Year minus (y) Six Million Dollars ($6,000,000).   The applicable percentages are as follows:

| Fiscal Year Ending | Percentage |
|---|---|
| 12/31/2013 | Zero (0) |
| 12/31/2014 | Five (5) |
| 12/31/2015 | Eight (8) |
| 12/31/2016 | Ten (10) |
| 12/31/2017 | Twelve (12) |

19

| 12/31/2018 | Twelve (12) |

11.4    Annual Reconciliation. At the end of each Fiscal Year following the annual audit, an adjustment will be made, if necessary, so that all fees and other amounts due Manager that are based on a percentage rather than fixed amount have been properly calculated and paid for the Fiscal Year covered by such audit. Any sums due either Manager or Owner will be paid upon receipt of the applicable invoice.

11.5    Expense Reimbursement. Owner will reimburse Manager for all Reimbursable Expenses incurred by Manager in connection with the performance of Manager's obligations pursuant to this Agreement.

11.6    Payment Authorization. Owner authorizes Manager (subject to the terms of any Mortgage or any applicable cash management agreement with any Mortgagee) to pay the fees and other amounts owed to Manager out of the Operating Account in accordance with this Agreement. As long as, pursuant to such authority, Manager has received all payments owing to it under this Agreement, Owner is not required to make the payment directly. If at any time, funds in these accounts are not sufficient to cover such payments, Owner will pay the amount of any shortfall within five (5) days of its receipt of the applicable invoice. The foregoing provisions concerning compliance with the terms of any Mortgage or cash management agreement are not intended to, and shall not, excuse Owner from any payment obligation under the terms of this Agreement.

11.7    Interest. Fees, Advances and other amounts due Manager that are not paid out of the Operating Account or the Reserve Fund Account when due and any sums that are due and payable from the Manager to the Owner by reason of this Agreement will bear interest at the lesser of ten percent (10%) per year or the highest lawful rate permitted by Legal Requirements.

11.8    No Right of Off-Set. Neither Owner nor Manager has any right, claim or defense of "offset" against the other. Manager may pay all fees and other amounts due Manager out of the Operating Account or, if the Operating Account does not have sufficient funds, Owner will pay all fees and amounts due Manager regardless of any claims or defenses that Owner may have or assert against Manager.

## ARTICLE 12
## INSURANCE

12.1    Insurance Coverage. Owner will maintain property insurance coverage, business interruption coverage, and liability insurance coverage (including, without limitation, workers compensation coverage in accordance with Legal Requirements, fidelity insurance, and employment practices liability insurance) sufficient to provide Owner and Manager with reasonable and adequate protection in the Operation of the Hotel as is customary.  The coverage to be maintained and the minimum limits required shall be not less than the same required under the License Agreements or otherwise by Future Franchisors. The required coverages will be purchased by Owner so as to be in effect from the Commencement Date. All policies will name Owner, Manager, and Future Franchisors as additional insureds, and will contain a provision that the policies may not be cancelled, amended or allowed to expire without thirty (30) days prior written notice to Manager. Owner will provide Manager with evidence acceptable to Manager that the

20

required policies are in effect no later than the Commencement Date, and annually after that, prior to the applicable policy's expiration. All premiums and deductibles for insurance purchased by Owner, other than premiums and deductibles on any Property Policy, shall be included in Expenses and Permitted Deductions.

12.2    Purchase of Insurance. Manager shall gather market data and comparable insurance information and advise Owner in the selection of insurance coverage amounts and market costs for such coverage from and consistent with hotel standards and norms. Owner's obligation to maintain the required insurance is not limited in any way because of any insurance that Manager or its Affiliates carry

12.3    Waiver of Subrogation. As used herein, the term "Property Policy" means any fire and extended coverage or all-risk material and property damage insurance policy which is carried by or on behalf of either Owner or Manager or any of the other parties named in Section 13.1. Owner and Manager each agree to obtain in each Property Policy language or an endorsement providing that any release from liability or of waiver of claim for recovery from the other party or any of the parties named in Section 13.1 entered into by the insured under such Property Policy prior to any loss or damage shall not affect the validity of the Property Policy or the right of the insured thereunder to recover, and providing further that insurer waives all rights of subrogation which such insurer might have against the other party or any of the parties named in Section 13.1. In addition to and without limiting or being limited by any other releases or waivers of claims in this Agreement, but rather in confirmation and furtherance thereof, to the extent not prohibited by law, Owner waives all claims for recovery from Manager and its agents, partners and employees and the Hotel Employees, and Manager waives all claims for recovery from Owner, Owner's members, partners and their respective agents, partners and employees for any injury or damage to or theft, robbery, pilferage, loss or the loss of use of any of their respective property to the extent of proceeds recovered or recoverable under insurance policies maintained or required to be maintained hereunder. It is the intention of Owner and Manager that each of them and their respective Affiliates either be named as an insured or additional insured or be the beneficiaries of waiver of subrogation provisions, as applicable, under all property, liability and other insurance procured and maintained in respect of the Hotel pursuant to this Agreement.

12.4    Owner's Risk. The required insurance coverage is for Owner's and Manager's benefit and protection. Manager makes no warranty or representation that the policies are adequate for Owner's needs. Owner assumes all risks in this respect and except for a breach of this Agreement by Manager or for Manager's gross negligence or willful misconduct, Owner waives all claims against Manager with respect to these matters and with respect to any partial or fully uninsured claims.

12.5    Changes. Manager may request such reasonable changes to the insurance requirements consistent generally with changes with respect to other Hotels, including requiring different or additional coverages, conditions and limits to reflect inflation, changes in standards of liability, higher damage awards in public or product liability litigation and business related liability, or other relevant changes in circumstances.

ARTICLE 13
INDEMNIFICATION AND LIMITATION OF LIABILITY

21

13.1    Indemnification by Owner.  Owner assumes sole and complete responsibility for, and will indemnify and hold harmless Manager and its partners, members, shareholders, directors, officers, employees and agents (the "Indemnified Parties") against and from, all payments of money, including those with respect to fines, penalties, taxes, losses, damages, costs, expenses (including reasonable attorney fees, investigation expenses, court costs, deposition expenses, and travel and living expenses) ("Payments") due to any claims, causes of action, investigations, administrative proceedings and demands ("Claims") with respect to the Construction or Operation of the Hotel, any occurrence at the Hotel, the presence of any hazardous materials on or under, or migrating from, the Hotel or the Hotel site or the environmental condition of the Hotel and the Hotel site, design or construction defects, or any acts or omissions of Owner, Owner's agents, contractors, professional advisors, tenants or licensees, including Claims caused by Manager's simple negligence and Claims for which Manager might be held to be strictly liable, "wrongful termination" Claims by Hotel Employees and violations of Legal Requirements, such as the Americans With Disabilities Act and the W.A.R.N. Act.  Owner's indemnification obligations: (i) do not apply to Claims that are caused by Manager's breach of this Agreement, or Manager's gross negligence or willful misconduct; (ii) do apply to all other Claims, including those based on: (a) theories of vicarious liability, including agency, apparent agency or employment or (b) failure to compel Owner's compliance with the provisions of this Agreement; and (iii) do apply to Payments made by Manager, or for which Manager is responsible, in connection with Manager enforcing Owner's obligations. Notwithstanding any other provision of this Section, Owner shall in no event be required to indemnify an Indemnified Party from and against Claims that are directly caused by his, her or its own breach of this Agreement or his, her, or its own gross negligence or willful misconduct. Notwithstanding any contrary provision of this Article 13, Owner and Manager agree for the benefit of each other that, with respect to Payments and Claims covered by this Section, they will look for recovery first to the appropriate insurance coverages in effect pursuant to this Agreement, regardless of the cause of such Claim.  Any payment pursuant to this Section 13.1 shall be treated as an Expense and Permitted Deduction to the extent that the basis of the Claim with respect to which the payment is made is an expense that would qualify as such under the definition of Expenses and Permitted Deductions set forth herein.

13.2    Defense against Claims.  Owner will defend Manager against all Claims other than those caused by Manager's breach of this Agreement, or Manager's gross negligence or willful misconduct.

13.3    Indemnification by Manager.  Subject to the terms of Section 13.1 hereof, Manager agrees to indemnify and hold harmless Owner and its partners, members, shareholders, directors, officer, employees and agents against and from all costs and expenses (including reasonable attorneys fees, investigation expenses, court costs, deposition expenses, and travel and living expenses) due to any Claims that are directly caused by a breach of this Agreement by Manager, or by Manager's gross negligence or willful misconduct.

13.4    Continuation of Obligations.  The indemnification and other obligations contained in this Article will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

22

## ARTICLE 14
## MARKS

Manager is permitted to use the Marks in the performance of its responsibilities pursuant to this Agreement in accordance with the License Agreements. Manager shall comply with the applicable terms of the License Agreements.

## ARTICLE 15
## CONFIDENTIAL AND PROPRIETARY INFORMATION

15.1     Right to Use.   Neither party hereto shall use any Confidential or Proprietary Information for any purpose other than with respect to the Construction and Operation of the Hotel pursuant to this Agreement.

15.2     Revisions.   Manager may revise, update, amend, change, modify or supplement ("Revisions") the Confidential and Proprietary Information any time.  Manager will continue to Operate the Hotel pursuant to such Revisions as they exist from time to time.  Manager will identify any expenses associated with such Revisions in the Annual Plan if known at that time, or obtain Owner's approval for any material expenditure if the matter cannot wait until the next Fiscal Year.

15.3     Ownership and Non-Disclosure.   As between them, Owner shall own the Hotel Data that is actually in either Manager's or Owner's possession during or after the term of this Agreement, and each of them, and their respective Affiliates and any Third Parties who have lawfully obtained Hotel Data, may use it during the term of this Agreement for the sole benefit of the Owner and the Hotel without Manager or Owner being in default of this Agreement.  Upon the termination or expiration of this Agreement, Manager will use reasonable efforts to provide the history of guests' stays at the Hotel for the most recent 12 months, together with their names, addresses and telephone numbers. In addition Manager will immediately return all Hotel Data, files, records, data, information and reports weather in written or paper form or in electronic format including all computer files and records to the Owner.  As between Manager and Owner, Owner owns all other Confidential and Proprietary Information.  Manager will make no claim and has no rights with respect to such information other than those that are granted in and then only for the term of this Agreement.  Manager will divulge Confidential and Proprietary Information only to Permitted Persons (as defined in Section 23.27 hereof) or Persons who must have access to such information in order to perform their responsibilities with respect to this Agreement or the Construction or Operation of the Hotel.  Manager will at all times use all reasonable means to protect the confidentiality of the Confidential and Proprietary Information, use it only for the sole benefit of the Owner and the Hotel and will not communicate or make it available to, or use it for the benefit of, any unauthorized Persons.

15.4     Survival.   This Article will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement

23

## ARTICLE 16
## MUTUAL TERMINATION RIGHTS

The following are material defaults, which, if applicable to a party, entitles the non-defaulting party, in addition to and cumulative of any and all rights and remedies available to the non-defaulting party under this Agreement, at law or in equity, to terminate this Agreement upon notice to the defaulting party and without the opportunity to cure the default except as specifically set out in this Article: (i) filing a petition or pleading under any bankruptcy or insolvency laws, or if such a petition is filed against, and is not opposed by a party; (ii) the appointment of a permanent or temporary conservator, receiver or trustee for a party, or all or substantially all of a party's property by any court having jurisdiction; (iii) making an assignment for the benefit of creditors or a written statement to the effect that a party is unable to pay its debts as they become due; (iv) the issuance of a levy, execution or attachment against all or substantially all of a party's property, which is not released, stayed or satisfied within 30 days; (v) a party is dissolved; or (vi) a material, final judgment against a party remains unsatisfied for 30 days or longer without being discharged, vacated, reversed or stayed (unless a supersedeas bond is filed). The effective date of termination under this Article is the date set forth in applicable notice.

## ARTICLE 17
## OWNER'S TERMINATION RIGHTS

17.1   <u>Owner's General Default Rights</u>. Owner may terminate this Agreement by notice to Manager if through Manager's actions or omissions an event of material default occurs as set forth in Section 17.2.

17.2   <u>Default by Manager – Opportunity to Cure</u>. The following, without limitation, are events of material default by Manager, which entitle Owner, in addition to and cumulative of any and all rights and remedies available to Owner under this Agreement, at law or in equity, to terminate this Agreement without payment of the Termination Fee upon notice to Manager, subject to Manager's right to cure. The cure period for any default, unless stated otherwise, is thirty (30) days from the receipt of the notice.

(a)     Failure to pay any past due fees or other amounts owed by Manager to Owner or its Affiliates within ten (10) days after notice.

(b)     Failure to provide access to Owner of funds that are the property of Owner or Owner's access to the Operating Account or Reserve Fund Account in accordance with the terms of this Agreement, and the continuation of such failure for ten (10) days after notice of such failure.

(c)     Failure to comply with: (i) any other material provision of this Agreement; or (ii) a sufficient number of non-material provisions which, collectively, constitute materiality or evidence a disregard for Manager's obligations under this Agreement, provided, however, if such default is such that it cannot reasonably be cured within thirty (30) days, Owner may not terminate this Agreement as long as Manager begins the cure

24

within the thirty (30) days and proceeds diligently and in good faith to accomplish the cure within a period not to exceed one hundred eighty (180) days.

(d)    Failure by Manager to account for the Owner's funds, cash receipts, cash and deposits.

The effective date of any termination under this Section is the date specified in Owner's termination notice.

17.3    Termination Without Cause.

(a)    Owner, at its option, shall have the right to terminate this Agreement at any time, without cause, upon not less than forty five (45) days prior written notice to Manager. In such event, Owner shall pay to Manager the Termination Fee provided that Manager complies with its obligations under Section 19.3.

(b)    If no License Agreements are executed, delivered, and in force with respect to the Hotel on or prior to the date that is six (6) months from the date of this Agreement, either Owner or Manager may terminate this Agreement upon not less than sixty (60) days prior written notice to the other. In such event, no Termination Fee shall be due or payable.

17.4    Termination Based on Project Performance. If the annual Gross Operating Profit of the Project for any two (2) consecutive full Fiscal Years, commencing with the first full Fiscal Year, is less than ninety percent (90%) in each of such two full Fiscal Years of the amount projected in the Annual Plan for such Fiscal Years, then Owner shall have the right to terminate this Agreement without further obligations on the part of either party. Owner's right of termination must be exercised, if at all, within ninety (90) days after Owner's receipt of the Annual Report for the second of the two full Fiscal Years in question. This Agreement shall terminate ninety (90) days after Manager's receipt of Owner's notice of termination. Manager shall not be entitled to the Termination Fee if this Agreement is terminated as provided in this Section 17.4.

ARTICLE 18
MANAGER'S TERMINATION RIGHTS

18.1    Default by Owner – Opportunity to Cure. The following, without limitation, are events of material default by Owner, which entitle Manager, in addition to and cumulative of any and all rights and remedies available to Manager under this Agreement, at law or in equity, to terminate this Agreement upon notice to Owner, subject to Owner's right to cure. The cure period for any default, unless stated otherwise, is thirty (30) days from the receipt of the notice.

(a)    Failure to pay any past due fees or other amounts owed to Manager or its Affiliates within ten (10) days after notice, provided that such failure is not a result of Manager's failure to make such payments even though Manager had access to sufficient funds in the Operating Account and the Reserve Fund Account.

25

(b)     Failure to provide funds to Manager or to the Operating Account or Reserve Fund Account in accordance with the terms of this Agreement, and the continuation of such failure for ten (10) days after notice of such failure.

(c)     Failure to comply with: (i) any other material provision of this Agreement; or (ii) a sufficient number of non-material provisions which, collectively, constitute materiality or evidence a disregard for Owner's obligations under this Agreement, provided, however, if such default is such that it cannot reasonably be cured within thirty (30) days, Manager may not terminate this Agreement as long as Owner begins the cure within the thirty (30) days and proceeds diligently and in good faith to accomplish the cure within a period not to exceed one hundred eighty (180) days.

(d)     Failure to provide evidence that Owner has obtained any insurance coverage required to be obtained by Owner pursuant to this Agreement.

(e)     Failure to approve any Capital Improvements necessary to allow the Hotel to be Operated in accordance with the Operating Standards, and, once approved, failure to complete them.

The effective date of any termination under this Section is the date specified in Manager's termination notice.

## ARTICLE 19
### CONSEQUENCES UPON TERMINATION/EXPIRATION

19.1    Owner's Obligations.  Upon the expiration or termination of this Agreement, Owner will immediately pay all amounts due and owing to Manager, and pay directly to each vendor and other party with who Manager has contracted for the benefit of Owner or otherwise pursuant to Manager's obligations under this Agreement an amount reasonably estimated by Manager to be sufficient to cover the amounts that will become due and owing after the termination or expiration date, attributable to the period prior to such date.

19.2    Manager's Rights.  In anticipation of the expiration or termination of this Agreement, Manager may begin to take action needed to accomplish any or all of the actions required pursuant to Section 19.1 as long as there is no unreasonable disruption to the Hotel's Operation.  Manager may pay the costs associated with such actions out of the Operating Account as an Expense and Permitted Deduction.  If sufficient funds are not available in the Operating Account, Owner will reimburse Manager upon receipt of a statement of costs.  If Owner prevents Manager from taking any of such actions, or fails to comply with Section 19.1 within the thirty (30) day period, Manager may seek injunctive or other relief to enforce Owner's obligations or Manager's rights without posting bond.

19.3    Manager's Obligations.  Upon the expiration or termination of this Agreement, Manager will immediately pay all amounts due and owing to Owner, submit all Hotel Data to Owner, and at the direction of the Owner, and from the Owner's funds pay directly to each vendor and other party with who Manager has contracted for the benefit of Owner or otherwise pursuant to Manager's obligations under this Agreement an amount reasonably estimated by

26

Manager to be sufficient to cover the amounts that will become due and owing after the termination or expiration date, attributable to the period prior to such date.

19.4    Owner's Rights.    In anticipation of the expiration or termination of this Agreement, Owner may begin to take action needed to accomplish any or all of the actions required pursuant to Section 19.3 as long as there is no unreasonable disruption to the Hotel's Operation.  Owner may pay the costs associated with such actions out of the Operating Account as an Expense and Permitted Deduction. Owner shall also be permitted to full and complete access to all files, records, operating policies and procedures as well as all other information as needed to facilitate the transfer of operational management responsibilities to any successor of Manager without disruption to the Hotel or the Hotel operations.

19.5    Survival.    This Article will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

## ARTICLE 20
## DAMAGE OR DESTRUCTION; CONDEMNATION

20.1    Damage or Destruction – Termination.    If the Hotel is totally destroyed or substantially damaged, such that the Hotel becomes uneconomical, unfeasible or not reasonably practical to Operate, either party may terminate this Agreement by notice to the other.  The Hotel will be deemed to have been substantially damaged if twenty-five percent (25%) or more of the aggregate floor space of the Hotel becomes untenantable or if Owner deems so in Owner's reasonable judgment.  If the notice is given by Owner, Owner, contemporaneously with the giving of the notice and as a condition to the effectiveness of such termination, will pay Manager as the Termination Fee such portion of such Termination Fee as Owner recovers from insurance proceeds attributable to Owner's obligation to pay such Termination Fee.—In such event, Owner shall not be obligated to pay any additional Termination Fee to Manager.

20.2    Damage or Destruction – Restoration.    If the Hotel is damaged, but not to the extent as set forth in Article 20.1 or if neither party elects to terminate this Agreement pursuant to Section 20.1, Owner may elect to promptly commence and expeditiously complete the Restoration in accordance with Section 20.6.

20.3    Condemnation – Termination.    If all or a substantial portion of the Hotel is taken by Condemnation (other than for temporary use), such that the Hotel becomes uneconomical, unfeasible or not reasonably practical to Operate, this Agreement will terminate as of the date of such taking.  A substantial portion of the Hotel is deemed taken if, in Owner's or Manager's reasonable opinion, the part not taken may not be repaired, restored, replaced, rebuilt or utilized so as to be acceptable as a Hotel.  If this Agreement is terminated pursuant to this Section, the Condemnation award will be paid to Owner as its property, provided, however, that Manager shall have the right to claim the Termination Fee in any Condemnation proceeding so long as such claim shall not be recoverable by Manager against or from Condemnation proceeds due the Owner.

20.4    Condemnation – Restoration.    If less than a substantial portion of the Hotel are taken by Condemnation, or this Agreement is not terminated pursuant to Section 20.3, Owner

27

will promptly commence and expeditiously complete any necessary Restoration in accordance with Section 20.6.

20.5   Condemnation – Temporary Use.   While a Condemnation of all or part of the Hotel for temporary use exists, this Agreement will remain in full force, subject to the following:

(a)   If the Condemnation is for a period not extending beyond the Operating Term, the Condemnation award, including any interest, will be included in Gross Revenues for the Fiscal Year in it is which received.   When the Condemnation terminates, Owner will promptly commence and expeditiously complete any necessary Restoration in accordance with Section 20.6.

(b)   If the Condemnation is for a period extending beyond the Operating Term, that portion of the Condemnation award, which is attributable to the period up to the expiration of the Operating Term, will be included in Gross Revenues for the Fiscal Year in which it is received.

20.6   Restoration.   Owner will promptly commence and expeditiously complete any necessary Restoration that is in the Owner's best interest in accordance with Article 3.   Owner will, consistent with Owner's best interest, Restore the Hotel as nearly as possible to its value, condition and character immediately prior to the damage, destruction or Condemnation and so that it would be acceptable as a Hotel.   Owner will complete any Restoration deemed advisable by Owner, as soon as reasonably possible after the date of such damage, destruction or the date after which any portion of the Hotel is not available to Manager due to a Condemnation, and if possible no later than one (1) year following the applicable date.   If not completed as provided in the previous sentence, Manager or Owner may terminate this Agreement upon thirty (30) days' notice to Owner.

20.7   Fees.   During the period from the date of the damage or destruction, or the date from which any portion of the Hotel is not available to Manager due to a Condemnation, through the: (i) completion of the Restoration; or (ii) termination of this Agreement, Owner will continue to pay Manager and its Affiliates the fees and other amounts actually earned pursuant to this Agreement but only from amounts actually available through any business interruption insurance or Condemnation award.

20.8   Consequences of Termination.   A valid termination pursuant to this Article is subject to Article 19, but is otherwise without liability by either party to the other party except: (i) as set forth in this Article; and (ii) for any causes of action a party has against the other for matters occurring up to and through the date of such termination, whether resulting from nonpayment of fees, default or otherwise.   The Operating Term is not extended or renewed because of any of the events contemplated by this Article.

ARTICLE 21
TRANSFERS

21.1   Assignment by Manager.   Manager may transfer all of its rights and obligations to an Affiliate, provided such Affiliate assumes such rights and obligations but otherwise Manager shall not Transfer this Agreement in whole or in part without Owner's prior written consent,

28

LEGAL26302590.3

which consent may be withheld in Owner's sole reasonable discretion. After a Transfer, Manager's liability under this Agreement is terminated except when the Transfer is to an Affiliate (in which case Manager shall remain liable hereunder), and except for any causes of action either party has against the other for matters occurring up to and through the date of such termination, whether resulting from nonpayment of fees, default or otherwise.

21.2    Transfers by Owner. Owner may effect or permit an Ownership Transfer without Manager's prior written consent, provided that the Ownership Transfer meets the following conditions:

(a)    With respect to any Transfer of Owner's entire interest in the Hotel, the Hotel and this Agreement must be Transferred to the same Person, and such Person must assume this Agreement pursuant to a written instrument and Manager shall continue this Agreement in its current form.

(b)    All of Owner's monetary obligations due to Manager must be paid in full at the time of notice or the Transfer.

21.3    Estoppel Certificates. Manager agrees that when requested by Owner upon not less than fifteen (15) days notice, Manager will sign and deliver to Owner a statement certifying: (i) that this Agreement has not been modified and is in full force and effect (or, if there have been modifications, that this Agreement is in full force and effect as modified and specifying the modifications); and (ii) whether or not any notices of Owner's default have been issued by Manager and the nature of the default. Upon similar notice, Manager will be entitled to a similar statement from Owner.

ARTICLE 22

OWNER'S UNDERSTANDINGS, REPRESENTATIONS
WARRANTIES AND COVENANTS

22.1    Representation and Warranties. Owner represents and warrants to Manager, and covenants with Manager, as follows as of the Effective Date and throughout the Operating Term:

(a)    Owner has fee title to, a leasehold interest in, or other right to possession of, the Hotel and the FF&E and OS&E, and will maintain such, as applicable, throughout the remaining Operating Term.

(b)    That as long as Manager is not in default hereunder, Owner will take all appropriate actions, judicial or otherwise, to maintain Manager's rights under this Agreement.

(c)    Owner will obtain and maintain in good standing all Governmental Permits, except those that, under applicable Legal Requirements, are required to be obtained and maintained by Manager.

(d)    Owner represents that it has the authority to enter into this Agreement.

(e)    That it will not offer or require Manager to offer Hotel guest rooms for

29

sale or lease as condominium or time share units or as anything other than the Hotel guest rooms.

22.2    <u>Understandings</u>.  Owner understands and agrees to the following:

(a)    Manager may, directly or indirectly through one or more Affiliates, engage in any business, purchase any real property for or make any other investment in a hotel, even if such business, real property or other investment is in competition with or an opportunity of the Owner; provided, however, that if Manager enters into any agreement or understanding to operate any hospitality product within five (5) miles of the Hotel, Manager shall notify Owner in writing prior to Manager commencing such operations.

(b)    Manager's lawful exercise of any of its rights with respect to this Section 22.2 is not a breach of any fiduciary duty Manager has to Owner arising out of the agency relationship created by this Agreement or otherwise.

22.3    <u>Covenants</u>. Owner agrees:

(a)    When and to the extent that professional expertise outside hotel management, including but not limited to legal, architecture, engineering, insurance and technology, is needed, including when and to the extent reasonably requested by Manager, to engage competent professionals in such disciplines to advise Owner and Manager.  Manager agrees to coordinate with such professionals.  Manager shall be entitled to rely upon the work and advice of such professionals, and Manager shall have no liability for errors or deficiencies in the work of such professionals.

(b)    To perform Owner's obligations under the License Agreements, and not to terminate, amend or modify the License Agreements without the prior written consent of Manager, which consent will not be unreasonably withheld, delayed or conditions.

ARTICLE 23
MISCELLANEOUS PROVISIONS

23.1    <u>Severability</u>.  If one or more clauses of this Agreement are held to be void or unenforceable for any reason by any Governmental Authority, such clause or clauses will be deemed to be separable in such jurisdiction, and the remainder of this Agreement will be deemed to be valid and in full force and effect.  Thereafter, the parties will enter into good faith negotiations to agree on new or alternative provisions, which carry out the parties' original intent.  It is the intent of the parties that each provision of this Agreement will be honored, carried out, and enforced as written.  Notwithstanding the above, if either party can establish that the actions of such Governmental Authority in modifying this Agreement would operate an undue hardship on either party or constitute a material deviation from the general purpose and intent of this Agreement, either party may terminate this Agreement on ninety (90) days prior written notice.

23.2    <u>Governing Law</u>. Notwithstanding any laws with respect to choice of law under which any other law might be applicable, this Agreement and the relationship between the

30

parties is subject to and governed by the laws (statutory or otherwise) of the State of North Carolina.

23.3    Venue and Jurisdiction.  Owner and Manager agree that all claims, disputes, or controversies whatsoever, arising out of or related to this Agreement in any way, must be commenced, filed and litigated before the state and federal courts located in Mecklenburg County, North Carolina.

23.4    Modifications and Changes.  Oral changes to this Agreement, including those by way of modification, addition, rescission, release, amendment, waiver or otherwise, are not valid or enforceable.  Changes may be made only by a written agreement signed by a duly authorized officer of each party.

23.5    Headings/Terms.  The Article and Section headings contained herein are for convenience of reference only and are not intended to define, limit or describe the scope or intent of any provision of this Agreement.

23.6    Third Parties.  This Agreement is for the sole benefit of the parties.  Neither party's obligations are for the benefit of any third party, and no third party acquires any enforceable rights with respect to this Agreement, except as otherwise expressly provided under Article 13.

23.7    Understandings and Agreements.  With respect to its subject matter, this Agreement and any addenda, exhibits, acknowledgements and amendments constitute the entire agreement between the parties, and supersede and terminate all prior agreements, either oral or in writing.  Any representations, inducements, promises or agreements between the parties, which are not in writing and signed by Owner and Manager, are not enforceable.

23.8    Force Majeure.

If a party's default under this Agreement (other than Owner's obligation to: (i) fund the Operating Account, the Reserve Fund Account, pay Manager and its Affiliates any fees and other amounts owed to them; (ii) fund any Capital Improvements contained in the Capital Expenditure Budget; and (iii) procure or maintain the insurance coverage required by this Agreement) is caused in whole or in part by a Force Majeure, such default and any right of the other party to terminate this Agreement for such default is suspended for as long as the default is reasonably caused by such Force Majeure. Any suspension is effective only from the delivery of a notice of the Force Majeure to the other party stating the party's intention to invoke the Force Majeure. However, if such suspension continues for longer than six months and such default still exists, either party may terminate this Agreement upon thirty (30) days notice to the other party.

23.9    Relationship of Parties.  Nothing in this Agreement constitutes or is to be construed to be or create a partnership, joint venture or franchise relationship between Owner and Manager.  The parties: (i) do not consider their relationship as one of franchisor and franchisee, or involving a business opportunity as that term is defined under various state business opportunity statutes; (ii) do not intend to create such relationships; and (iii) want no laws applied which might create one.  Where not prohibited by applicable law, each party waives all rights either of them may have under any state or federal laws, rules or regulations that apply

31

to franchise or business opportunity relationships.  Manager intends to challenge the application of any such laws, rules or regulations if any Person claims that a franchise or business opportunity relationship exists pursuant to this Agreement, and intends to claim any applicable exemption should any of them be found to apply.  Owner will cooperate with Manager in seeking and obtaining such exemptions.

23.10  <u>Jury Waiver</u>.  To the fullest extent permitted by applicable law, each party knowingly and voluntarily waives the right to a trial by jury in any litigation arising under, as a result of or in connection with this Agreement.

23.11  <u>Binding Agreement</u>.  This Agreement is binding upon the parties and their respective successors and assigns.

23.12  <u>Notices</u>.  Any notices required or permitted must be given in advance and in writing and delivered by fax, by personal delivery or by reliable expedited delivery companies. Notices by expedited delivery are deemed delivered and received on the second business day immediately succeeding the date on which the notice was given to the expedited delivery company.  Notice given in any other manner shall be effective only if and when received by the party to be notified.  Notices shall be addressed as follows:

>    To Manager:
>
>    Wischermann Partners, Inc.
>    18322 Kylie Court
>    Minnetonka, MN 55345
>    Attention: Paul Wischermann
>
>    To Owner:
>
>    Carolina Hospitality 2010 LLC
>    888 Seventh Avenue, 20th Floor
>    New York, NY 10019
>    Attention: George Dfouni

23.13  <u>Execution/Counterparts</u>.  Two copies of this Agreement may be signed, each of which, when signed, is an original and which, together, constitute one and the same instrument. This Agreement may be executed in two or more counterparts, each of which will constitute an original and all of which, when taken together, will constitute one Agreement.

23.14  <u>Attorneys' Fees</u>.  The prevailing party is entitled to recover all reasonable and necessary costs and expenses, including attorneys' fees, incurred by that party in enforcing any provisions of this Agreement, or in defending against any claims made against that party by the other party with respect to this Agreement, whether through injunctive relief or otherwise.

23.15  <u>Actions By Others</u>.  Where Owner is prohibited by this Agreement from directly taking any action, or where action by Owner would constitute a material breach of this Agreement, Owner agrees that it will not encourage, authorize or permit any other person or entity, directly or indirectly or under its direct or indirect control to take such action.

32

23.16   Joint and Several Liability.  The liability of all Owners (if more than one Person) signing this Agreement is joint and several.

23.17   Survival.  All provisions which, as a matter of logic or otherwise, need to survive the expiration or termination of this Agreement in order to achieve an intended result, will survive despite the absence of specific survival language with respect to each of them.

23.18   Time of the Essence.  Time is of the essence of each and every provision of this Agreement.

23.19   Approvals.  Whenever either party's approval is required, such approval, unless specifically stated otherwise, must be obtained in advance, in writing and not be unreasonably withheld or delayed.  Either party may stipulate a reasonable time within which an approval must be  given or withheld, but in no case, unless an emergency exist, less than five (5) business days. A determination whether Manager's approval is reasonably withheld is to be based on Manager's needs to protect its rights under this Agreement and the integrity, value and reputation of the Hotel, although as an additional factor, Manager may take Owner's economic or other circumstances into account.  Either party's approval of any matter is a permission only and not a representation, warranty or assurance.

23.20   Successors Bound.  This Agreement will be binding upon and inure to the benefit of Owner, its successors and permitted assigns, and will be binding upon and inure to the benefit of Manager, its successors and its permitted assigns.

23.21   Cumulative Rights.   The remedies provided for in this Agreement are not exclusive.  Either party is free to pursue such other remedies as may be available at law or in equity, subject to the express limitations herein.

23.22   Terminology.  All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, include all genders; the singular includes the plural and the plural includes the singular.   The Table of Contents and titles of Articles, Sections and paragraphs in this Agreement are for convenience only and neither limit nor amplify the provisions of this Agreement, and all references in this Agreement to Articles, Sections, paragraphs, clauses, exhibits, addenda or riders also refer to the corresponding Article, Section, paragraph, clause of, or exhibit, addendum or rider attached to this Agreement, unless otherwise specified.

23.23   Exhibits, Addenda, Schedules and Riders.  All exhibits, addenda, schedules and riders attached hereto are incorporated in this Agreement.

23.24   Interpretation.  The parties do not want any provision of this Agreement to be construed against or interpreted to the disadvantage of either party by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured or dictated such provision.

23.25  Limitation of Claims.   Except for those that are brought pursuant to the indemnification in Article 13 and the insurance coverage obligations in Article 12, upon expiration or termination of this Agreement, neither party will assert any claim or cause of action

33

with respect to this Agreement against the other unless the party commences the action within one (1) year following the effective date of expiration or termination of this Agreement. Notwithstanding anything apparently to the contrary herein either party shall be liable hereunder for any consequential, exemplary or punitive damages.

23.26   Photocopies.  Photocopies and facsimiles of this Agreement showing signatures are fully binding and effective for all purposes.

23.27   Confidentiality.  Each party hereto agrees not to disclose the terms or conditions of this Agreement to any Person other than a Permitted Person, provided, however, that the restrictions of this Section do not apply to any information required to be disclosed pursuant to Legal Requirements or to information that becomes public other than by virtue of a breach of this Section.  For purposes of this Section, the term "Permitted Person" means: (i) the partners, shareholders, directors, officers, members and employees of the party disclosing such information; (ii) accountants, attorneys, consultants and other professionals engaged to render services in connection with the Project; and (iii) lenders and potential lenders to and potential purchasers of the Project.  The party disclosing such information will inform Permitted Persons of the confidential nature of the information disclosed to them and will require them to agree to act in accordance with the provisions of this Section with respect to such information.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**Wischermann Partners, Inc.**

By: _____
      Paul Wischermann, Its President

**Carolina Hospitality 2010 LLC**

By: _____
Its: _____ GEORGE D FOUNI, MEMBER

dms.us.51806449.02

34

LEGAL26302590.3

## SCHEDULE 1

**PROPERTY DESCRIPTION**

[attached behind]

SCHEDULE 2

## HOTEL AND RELATED FACILITIES

The Hotel (both towers) and all related facilities, such related facilities to include, without limitation, all banquet facilities, ballrooms, bars and restaurants, meeting rooms, spa, pools and fitness center, and parking facilities used or available for use in connection with such operation.

<u>SCHEDULE 3</u>

**FY 2013 ANNUAL OPERATING BUDGET SUMMARY**

**PRO FORMA OPERATING BUDGET**

[attached behind]